Argued and submitted August 20, 2020, reversed April 14, 2021

Aszemar GLENN,
*Plaintiff-Respondent,*
*v.*
Thomas GLENN,
*Defendant-Appellant,*
*and*
Robert GLENN; et al.,
*Defendants.*
Multnomah County Circuit Court
18CV10337; A170724

487 P3d 856

Plaintiff Aszemar Glenn brought this action for partition by sale of the Glenn family home. He named each of the Glenn siblings as defendants because they held title to the home as tenants-in-common. Defendant, Thomas Glenn, had lived in the home since 1987 and had paid its property taxes for at least 20 continuous years. None of the other Glenn siblings had lived in the home during his period of possession. Defendant asserted, as an affirmative defense, that he had adversely possessed the home as against each of his siblings because, under ORS 105.615, he had paid its property taxes and occupied it for 20 continuous years. The trial court ruled that, because he had been delinquent on his property taxes for the three years before plaintiff filed this suit, defendant did not satisfy the statute's requirements and plaintiff was entitled to partition. Defendant appeals, arguing that, under ORS 105.615, title vested in him as a matter of law once he had occupied the home for 20 years because he had paid his property taxes during that time period. *Held*: The trial court erred. Defendant adversely possessed the home once he satisfied the requirements of ORS 105.615. That he had been delinquent on his taxes after the 20-year vesting period was of no consequence because he had acquired title, as a matter of law, after occupying the home and paying its property taxes for 20 years. Accordingly, plaintiff was not entitled to partition.

Reversed.

Shelley D. Russell, Judge.

Harry D. Ainsworth argued the cause and filed the brief for appellant.

William A. Henderson argued the cause and filed the brief for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Reversed.

**MOONEY, J.**

The issue presented is whether a tenant in common of real property acquires fee simple title by adverse possession under ORS 105.615[1] by operation of law once the tenant in common has met the requirements of exclusive possession and payment of property taxes for 20 continuous years. ORS 105.615 provides a way for a tenant in common to acquire fee simple title to the property, by adverse possession, after possessing the property "for an uninterrupted period of 20 years or more" and paying "all taxes assessed against such property while in possession." Plaintiff argues that vesting is not by operation of law, but rather through legal action and necessarily requires possession and payment of taxes to be current at the time of filing. Defendant, on the other hand, argues that vesting occurs by operation of law upon completion of the 20-year vesting period in compliance with the statute. Because we agree that vesting occurs by operation of law, we reverse.

Plaintiff Aszemar Glenn filed this partition action pursuant to ORS 105.205,[2] seeking to force the sale of the Glenn family home and to distribute the proceeds, in part to Multnomah County to satisfy its outstanding tax lien and to avoid an impending foreclosure, with the remaining proceeds to be divided among the Glenn family members with ownership interests in the property. Defendant Thomas Glenn filed an answer, in which he asserted an affirmative defense of fee simple ownership by adverse possession, relying on ORS 105.615, and alleging that he had been in possession of and paid taxes on the home continuously for more than 20 years, exclusive of his siblings' interests in

---

[1] The text of ORS 105.615 is set out below. 310 Or App at 668.

[2] ORS 105.205 provides:

"When several persons hold real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years, or when several persons hold as tenants in common a vested remainder or reversion in any real property, any one or more of them may maintain a suit for the partition of the real property according to the respective rights of the persons interested therein, and for a sale of all or a part of the property if it appears that a partition cannot be had without great prejudice to the owner."

the property as tenants-in-common.[3] After a bench trial, the trial court concluded that defendant had failed to establish title by adverse possession and granted plaintiff's request to partition and sell the home.

On appeal, defendant raises three assignments of error. In his first, he argues that the trial court erred when it ruled that ORS 105.615 was "not a self-executing statute and that title did not vest by operation of law once" defendant met its requirements. In his second, he argues that the court erred when it ruled that title vests under ORS 105.615 only after the person claiming adverse possession satisfies its requirements *and* takes some action to "seek title." In his third assignment, which he acknowledges is unpreserved, defendant seeks plain-error review of the trial court's decision to proceed without all necessary parties (*i.e.*, all Glenn siblings) participating in the action. As to his first and second assignments, we conclude that the trial court erred in its application of ORS 105.615 and, therefore, reverse. And because the error asserted in the third assignment is not plain, we decline to consider it. *See Augustus v. Board of Nursing*, 284 Or App 420, 426, 392 P3d 788 (2017) (declining to consider unpreserved error when the appellant did not develop argument as to why the error was plain).

We address the first and second assignments of error together because they present the same basic question of statutory construction. We state the undisputed pertinent facts and procedural framework, which we draw from the record.

The Glenn family home, located in Portland, had been owned by Marcus and Sylvia Glenn, who were divorced, as tenants in common, each with an undivided one-half interest in the whole. Mr. and Ms. Glenn had six children, including plaintiff, defendant, and four others. In 1987, defendant began living in, and paying property taxes on, the

---

[3] The other Glenn siblings were named defendants in the lawsuit but did not file an answer or otherwise participate in the action, and, ultimately, they were dismissed for want of prosecution; none of them appear on appeal. Multnomah County filed an answer but was later dismissed when the outstanding taxes were paid. Unless otherwise specified, we use the singular "defendant" to refer to Thomas Glenn.

Glenn family home. That same year, Sylvia Glenn conveyed her one-half interest in the family home to her daughter, Sydiria Silvia. While it is not clear whether defendant occupied the home alone, the parties agree that his occupancy beginning in 1987 was exclusive to the owners of the property. And then, in 1995, Silvia conveyed her one-half interest in the Glenn family home to defendant.[4] Marcus Glenn died in 2005 and his one-half interest was transferred to plaintiff as claiming successor in a small estate proceeding. In 2014, plaintiff conveyed that one-half interest to each of the six Glenn children "as tenants-in-common" using a "Deed of Claiming Successor."

Defendant has been in possession of the home, to the exclusion of all other tenants in common, and has paid the property taxes, since 1987. He made timely property tax payments for each year between 1987 and 2014. He did not timely pay the taxes that accrued against the property for the years 2015 through 2018, and Multnomah County instituted legal action to recover those past due amounts. After filing his answer and affirmative defense, but before trial, defendant paid the unpaid property taxes and Multnomah County was dismissed as a party to this case.

The issue before the trial court was legal: Did title to the property vest in defendant pursuant to ORS 105.615, by operation of law, in 2007, when he had lived on the property for 20 continuous years, exclusive of cotenants, and had paid the associated property taxes?

At trial, plaintiff relied on *Miller v. Miller*, 101 Or App 371, 376, 790 P2d 1184 (1990), for the proposition that a cotenant can only be awarded title by adverse possession if he or she has satisfied the requirements of ORS 105.615 "at the time the claim [was] made." Plaintiff argued that whether defendant adversely possessed the property is determined at the time he filed his answer and defense and, because the tax payments were not then current, he was not entitled to acquire title under ORS 105.615. Defendant countered that

---

[4] We acknowledge that plaintiff may dispute the validity of the conveyance from Silvia to defendant. But the record is minimal on that point, the question is not before us, and, in any case, the answer is not necessary to our resolution of this appeal.

title to the home vested in him by operation of law in 2007 because, at that point, he had lived in the home and paid taxes for 20 continuous years. That he later fell behind in his taxes, according to defendant, did not divest him of his ownership interest. He argues that whether he continues to remain current on his property taxes is not relevant to his ownership of the property. In defendant's view, ORS 105.615 permitted, but did not require, him to file a legal action to establish ownership by adverse possession.

The trial court ruled in favor of plaintiff and entered a judgment granting his request for partition and sale. The court determined that (1) under *Miller*, a party "may acquire" title by adverse possession "if certain conditions exist at the time title is sought"; and (2) because defendant had not paid "all property taxes" due at the time he filed his answer, he had not adversely possessed the home under ORS 105.615.[5] Defendant appealed, making the same arguments on those points here as he did in the trial court.

To provide context for our discussion of adverse possession between cotenants who own property as tenants in common, we begin with a brief discussion of the law of adverse possession in general. Adverse possession is a doctrine under which a person in possession of land owned by someone else may acquire valid title to the land if certain requirements are met. At common law, adverse possession generally required proof, by clear and convincing evidence, that the claimant maintained "actual, open, notorious, exclusive, hostile, and continuous possession of the property for ten years." *Tieu v. Morgan*, 246 Or App 364, 369, 265 P3d 98 (2011). Oregon replaced common-law adverse possession with statutory adverse possession in 1989 when it enacted ORS 105.620, adopting the common-law elements and adding a new honest-belief requirement. *See Wood v. Taylor*, 307 Or App 688, 695-96, 479 P3d 560 (2020) (discussing

---

[5] As we explain below, the trial court inadvertently relied on language in a prior version of the statute, ORS 105.615 (1969), *amended by* Or Laws 1989, ch 1069, § 3, which provided:

"An action may be brought under ORS 105.605 by a tenant in common of real property to establish adverse possession as against all other cotenants if the tenant in common has been in possession of the real property, exclusive of all other cotenants, for an uninterrupted period of 20 years or more and has paid all taxes assessed against such property while in possession."

codification of common-law adverse possession and adoption of "honest belief" requirement); Or Laws 1989, ch 1069, § 1.[6]

Historically, adverse possession also applied to tenants in common seeking title against the other cotenants. *Crowely v. Grant*, 63 Or 212, 217-18, 127 P 28 (1912). However, when property is owned in a tenancy in common, "possession of one cotenant is the possession of all," and hostile possession by one cotenant required more than mere occupation of the property to prove hostility of possession sufficient to acquire title. *Nedry v. Morgan*, 284 Or 65, 68, 584 P2d 1381 (1978). To satisfy the hostility requirement, the cotenant in possession was typically required to oust his or her tenants in common by providing them with actual notice that he or she "intend[ed] to occupy the property exclusively." *Id*. Thus, the adverse possession period would not begin to run until after the possessing cotenant provided notice to the others of his or her intent to oust them.

Oregon expressly eliminated the requirement of ouster for tenants in common seeking fee simple title by adverse possession when it amended ORS 105.615 in 1989. Or Laws 1989, ch 1069, § 3. It did so because of the unique ouster and service issues that arise when a large number of people inherit property as tenants in common, but only one or more of them actually possess the property. Exhibit E, House Committee on Judiciary, HB 3195, Apr 12, 1989 (statement of RELU representative Eugene L. Grant). The current version of ORS 105.615 provides a way for a tenant in common to acquire fee simple title to the property, by adverse possession, after possessing the property "for an uninterrupted period of 20 years or more" and paying "all taxes assessed against such property while in possession."

---

[6] The underlying utilitarian policies said to justify adverse possession vary, but they include, among other things, (1) encouraging and rewarding the productive use of land and (2) discouraging the abandonment of land. *See* John G. Sprankling, *Understanding Property Law* 480-81 (4th ed 2017); Henry W. Ballantine, *Title by Adverse Possession*, 32 Harv L Rev 135 (1918). Practical considerations of the certainty of land ownership have also been discussed as reasons for permitting title by adverse possession. Thomas W. Merrill, *Property Rules, Liability Rules, and Adverse Possession*, 79 NW U L Rev 1122, 1133 (1984). In Oregon, we have concluded that the doctrine of adverse possession is consistent with those principles of utility, productivity, and certainty of title. *See Nedry v. Morgan*, 284 Or 65, 68-71, 584 P2d 1381 (1978).

The parties disagree about what those phrases mean, and whether the trial court correctly interpreted and applied them. We review the trial court's interpretation of a statute for errors of law. *State v. Gaines*, 346 Or 160, 164, 206 P3d 1042 (2009). To determine how ORS 105.615 applies to the facts of this case, we utilize the familiar approach to statutory construction outlined in *Gaines*. That is, we discern "the intention of the legislature if possible," ORS 174.020(1)(a), by examining "the text and context of the statute, and any helpful legislative history," *State v. Chapman*, 367 Or 388, 395, 478 P3d 960 (2020). We begin with the text of ORS 105.615 itself:

> "Unless otherwise agreed or provided in a granting document, a tenant in common of real property may acquire fee simple title to the real property by adverse possession as against all other cotenants if the tenant in common or the tenant in common's predecessor in interest has been in possession of the real property, exclusive of all other cotenants, for an uninterrupted period of 20 years or more and has paid all taxes assessed against such property while in possession. Notice of the exclusive possession need not be given to the other cotenants by the cotenant in possession."

The parties do not dispute that adverse possession under that statute requires continuous possession, exclusive of cotenants, and payment of taxes for 20 years. The primary question we must answer is whether title vested in defendant under ORS 105.615, by operation of law, when he met the statutory requirements for the 20-year statutory period.

As a preliminary matter, we note that, in *Miller*, we analyzed a prior version of ORS 105.615.[7] That earlier version of ORS 105.615 (1969), *amended by* Or Laws 1989, ch 1069, § 3, stated, in pertinent part, that "[a]n action may be brought under ORS 105.605 by a tenant in common of real property to establish adverse possession as against all other cotenants if the tenant" satisfies the statute's 20-year possession and property tax requirements. (Emphasis added.) The phrase "[a]n action may be brought" is not in the current version of ORS 105.615, which now states simply that

---

[7] The full text of the earlier version of ORS 105.615 is set forth above. 310 Or App at 666 n 5.

a cotenant "*may acquire*" title by adverse possession if he or she meets the statute's requirements.

The phrase "may acquire fee simple title," is different than "an action may be brought." The reference in the earlier version of the statute to "an action" operates as a limitation on how title "may" be acquired—a limitation that does not exist in the current version of the statute. By removing the words "an action" from the statute in 1989, the legislature untethered the ability of a tenant in common to acquire title by adverse possession from the filing of a legal action. By relying on *Miller*, the trial court incorrectly focused on the point in time when defendant raised his adverse possession defense to determine whether he met the requirements of ORS 105.615, even though the current version of that statute no longer looks to when "an action" is filed.

Having concluded that title may vest as a matter of law without the necessity of first bringing an action, we turn to the other key phrase in question, which is the one that requires a cotenant in possession of property to have "paid all taxes assessed against such property while in possession." Plaintiff argues that the term "while in possession" requires the possessor to pay all taxes while occupying the home—even if that period of occupation lasts longer than the statute's 20-year period. Defendant argues that the phrase "while in possession" refers only to the 20-year period and that title vests as a matter of law once the person occupying the property meets its requirements after 20 years. We agree with defendant's interpretation of the statute.

Even if we assume, without deciding, that the phrase "while in possession" is ambiguous because it can refer to two equally plausible interpretations, when considered in context, the statute demonstrates that defendant's reading is correct. Context, for the purposes of statutory construction, can include "related statutes." *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012). Under ORS 105.620, which governs traditional adverse possession claims, title vests as a matter of law as of the date that the possessor satisfies its requirements. *See* ORS 105.620(1)(b)(A) (referring to the 10-year period required to possess property as

the "vesting period"); *Nguyen v. Conner*, 186 Or App 627, 630, 64 P3d 1181 (2003) (reviewing the point at which a person's interest *vested* under ORS 105.620). And that statute reflects the common-law rule, which treats title as vesting when the possessor meets the requirements for adverse possession. *Noteboom v. Bulson*, 153 Or App 361, 365 n 1, 956 P2d 1042, *rev den*, 327 Or 431 (1998) (concluding that title vested, as a matter of law, when the requirements of adverse possession were met, and finding it unnecessary to consider the nature and frequency of the defendants' activities on the property after they moved away from it).[8]

We conclude that, like the vesting of title under ORS 105.620, title vests under ORS 105.615, as a matter of law, once a cotenant remains in continuous possession of the property for 20 years, having also paid the property taxes accrued against the property during that time period. Like the 10-year "vesting period" in ORS 105.620, ORS 105.615 sets forth its own 20-year vesting period for adverse possession as between tenants in common. ORS 105.615 did not require defendant to prove that he was current on the property taxes associated with the Glenn family home when he filed his defense to plaintiff's partition claim; his burden was to show that he had paid the taxes during the 20-year vesting period.

Defendant demonstrated that he had continuously occupied the Glenn family home since 1987 to the exclusion of his cotenants and that he had, in fact, paid all of the property taxes during the vesting period. Fee simple title vested in him, having met the statutory requirements, upon completion of the vesting period. Whether he continued to pay the property taxes timely—or at all—is of no consequence to the fact that title had vested in him by operation of law

---

[8] We acknowledge that the vesting period of ORS 105.620 is "10 years" and that in ORS 105.615, which applies here, the vesting period is "20 years or more." We can imagine a textual argument that the words "or more" modify the vesting period when possession exceeds 20 years, making automatic vesting at any point arguably implausible. However, given that the legislature removed the words "an action" from ORS 105.615 in 1989, untethering acquisition of title by adverse possession in tenancies in common from the filing of a legal proceeding, and given also the addition of language expressly removing the notice requirement, it is more likely that the words "or more" are simply a remnant of the pre-1989 version of the statute and, therefore, surplusage.

in 2007. The record reflects that defendant satisfied the requirements of ORS 105.615 in 2007 and, thus, fee simple title to the Glenn family home vested in him then as a matter of law. Plaintiff was not entitled to partition of the property.

Reversed.